GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v.
FÉLIX SANCHEZ.

Decided October 13, 1909.

**1.—Conflicting Testimony—Province of Jury.**

When the testimony is conflicting it is the province of the jury to decide between the witnesses, and the mere fact that there was a conflict in the testimony, is not sufficient ground for setting aside the verdict.

**2.—Negligence—Unloading Oil Car.**

In a suit for damages for personal injuries received while unloading a tank car of petroleum, evidence considered and held sufficient to support a verdict finding the defendant guilty of negligence and that the plaintiff did not assume the risk arising from the situation.

**3.—Same—Pleading—Evidence.**

When there was no allegation that gravel or some other substance had in some manner gotten into a valve in an oil car and caused the oil to spout in plaintiff's face, thereby injuring him, and the theory of the defense was that plaintiff had voluntarily assumed the risk of the situation, it was not error for the court to exclude evidence of the surmises of witnesses as to the cause of the oil spouting.

**4.—Charge—Unknown Dangers.**

When the pleadings raise the issue, it is proper for the court to charge the jury that if the dangers were hidden so that an employee could not and did not know of them, the employer would be liable for sending the employee into a place where such hidden dangers would be developed by the acts of the employer's agents or servants in the performance of the work in hand.

**5.—Practice—Refusal of Special Charge.**

It is proper for the trial court to refuse special charges when the same are substantially included in the general charge or when there is no evidence warranting the same.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelley & Wolters,* for appellant.—It is the duty of the trial court to instruct a verdict where there is no evidence to justify a finding for plaintiff on the essential issue of actionable negligence covered by the plaintiff's pleading. Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307; Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 88; Lee v. International & G. N. Ry. Co., 89 Texas, 583.

Contributory negligence: Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 163; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Sanches v. San Antonio & A. P. Ry. Co., 88 Texas, 119; Bennett v. St. Louis S. W. Ry. Co., 82 S. W., 333; Texas & N. O. Ry. Co. v. McDonald, 88 S. W., 201.

Assumed risk: Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Texas & P. Ry. Co. v. Bradford, 66 Texas, 735; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Peck v. Peck, 87 S. W., 249.

In an action for personal injury, based on alleged negligence, in

which the defense of contributory negligence is interposed, and upon the trial of which the plaintiff's own testimony discloses want of ordinary care on his part as a concurring cause of his injury, it becomes the duty of the trial judge to instruct a verdict for defendant, and if he fails to do so, and a verdict be rendered against defendant on this state of facts, such verdict should be set aside. Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 314; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 163; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Bennett v. St. Louis S. W. Ry. Co., 82 S. W., 333; Texas & N. O. Ry. Co. v. McDonald, 88 S. W., 201; Galveston, H. & S. A. Ry. Co. v. Bracken, 59 Texas, 75; Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 88.

In an action for personal injury by a servant against the master based on the alleged negligence of the latter, when the defense of assumed risk is plead, and the facts show that the risk and dangers causing the injury were open and obvious to plaintiff, and by virtue of the physical facts and his own experience, were as well known and as obvious to him as to the master, the defendant is not legally liable, and a verdict against defendant based on such state of facts should be set aside. Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22; Texas & P. Ry. Co. v. Bradford, 66 Texas, 735; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Peck v. Peck, 87 S. W., 249; Galveston, H. & S. A. Ry. Co. v. Bracken, 59 Texas, 75; Wood on Master and Servant, sec. 326.

The court erred in refusing to permit the defendant's witnesses J. T. Naylor and W. R. Cone to testify in response to interrogatories propounded by defendant's counsel, in effect, that after the alleged accident the said witnesses, using a wrench, endeavored to shut off the oil and prevent its further escape from the oil tank in question; that they were unable to do so; that thereupon they turned the wrench in such manner as to further open and release the valve from which said oil was escaping, and thereafter again tightened the same, and thus succeeded in shutting off said oil; and that, in their opinion as experts, the reason of the original escape of oil was that some gravel or other obstruction had gotten between the parts of said valve so as to hold it open, and thus prevented it from being closed until, by reason of further loosening the valve, the pebble or other foreign substance had thus escaped or been removed. Evidence of any fact or circumstance tending to establish or refute the allegations that the agent or servant of defendant did or did not do the thing alleged, or that his conduct complained of proximately caused the alleged injury, was relevant and material to the issues of the cause, and admissible. Neil v. Keese, 5 Texas, 33; Wells v. Fairbank, 5 Texas, 584; Chandler v. Meckling, 22 Texas, 42; Goldman v. Blum, 58 Texas, 641; Horton v. Reynolds, 8 Texas, 284; Day v. Stone, 59 Texas, 613; Hunter v. Lanius, 82 Texas, 683.

That the charge must not submit a theory of liability which is not covered (1) by the pleadings of plaintiff or (2) the evidence. (1) Texas & P. Ry. Co. v. French, 86 Texas, 98; Loving v. Dixon, 56 Texas, 79; Houston & T. C. Ry. Co. v. Terry, 42 Texas, 451; Markham v. Carothers, 47 Texas, 22.

(2) Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 121; Texas Pac.

Ry. Co. v. Wisenor, 66 Texas, 675; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 392.

That the master would not be liable to the servant for injuries resulting from a danger which would necessarily have been known to and avoided by the servant through the exercise of ordinary care in performance of his duties: Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 702; Green v. Cross, 79 Texas, 130; Texas & P. Ry. Co. v. Bradford, 66 Texas, 736; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Peck v. Peck, 87 S. W., 249.

An employe who enters and remains in the service of an employer, to perform a given line of work, is presumed to undertake such work according to the usual and established methods and means of the employment, and to so understand; and in the event of injury received as a result of performing the work according to such methods and means, or from conditions and dangers of which he knew or could have known by the use of such care as a person of ordinary prudence would have exercised in connection with the performance of such service, he will be held, in law, to have assumed the risk and danger of such injury, and can not recover therefor. Texas & P. Ry. Co. v. French, 86 Texas, 98; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 702; Green v. Cross, 79 Texas, 130; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 164; Texas & P. Ry. Co. v. Bradford, 66 Texas, 736; Wood on Master and Servant, section 326.

*J. M. Gibson* and *Joe H. Eagle,* for appellee.—The law recognizes that certain things speak for themselves (*res ipsa loquitur*); and where an accident occurs in handling machinery, and where the party handling the same is using due care, and where no actual defect in the machinery is positively shown, it will be presumed some one was at fault with reference to the inspection or manipulation of appliances. The testimony of an unavoidable accident, to be sufficient to take a case from the jury or set aside their finding, must be so strong as to admit of no other conclusion to be drawn from all the facts and circumstances in evidence; otherwise the verdict is sustained. The law does not compel the jury to accept the word of any one or more witnesses, if there are circumstances or testimony to the contrary. Graham v. Badger, 164 Mass., 42; 41 N. E., 61, opinion by Justice Holmes, now on Supreme Court United States; Griffen v. Manice, 166 N. Y., 188, 59 N. E., 925, —— L. R. A., 922; see also the authorities cited below; Gulf, W. & P. Ry. v. Wittnebert, 20 Texas Ct. Rep., 582.

The proffered testimony of the witnesses (excluded) was only tendered to make admissible the opinion of said witnesses to the effect that a small rock or gravel had been loaded into the car and gotten into the valve or tube at bottom of the car. The evidence was not supported by any pleading of defendant, and was testimony of an affirmative defense. Before it would have been admissible, defendant must have tendered a proper plea, giving notice and tendering an issue of law or fact that the injury happened by an unavoidable acci-

dent, and setting out the manner and form and way in which this accident occurred, to wit: by a gravel or rock in the loaded oil car. Defendant below filed no such plea. Rev. Stats., art. 1183; Willis v. Hudson, 63 Texas, 678; Smothers v. Fields, 65 Texas, 435; Moody v. Rowland, 100 Texas, 370.

FLY, Associate Justice.—This is a suit for damages instituted by appellee against appellant. After alleging that appellee was an employe of appellant the petition proceeds as follows:

"That upon said date the defendant caused one of its tank cars loaded with oil or crude petroleum to be run upon the switch at said place for filling the oil tank there situate for the storage of petroleum used as fuel by the defendant upon its engines operating on said road to San Antonio. That the plaintiff was instructed and commanded by the defendant's agent then and there operating and controlling the operation and unloading of said car, to go under the said oil car or tank filled with crude petroleum oil and to unscrew the nipples of the two tubular apertures, pipes or drains under said car, and attach thereon the rubber tube or hose used to pump the oil from the tank car into the oil tank reservoir there situate; that plaintiff not being aware that the top of said oil-tank car was open, and that the key or appliance unlocking a valve in the bottom of said car was turned so as to leave open free egress of the oil from said car on removal of said nipples on the projecting tubes at the bottom thereof, went under said car, and on removing the nipple from one of the said tubes the oil, petroleum, gas and tar acids and other poisonous substances in said car and petroleum fluid violently spouted out upon plaintiff's face and body, and entering both of his eyes, wounded, poisoned and burned the lids, balls and pupils thereof so as to greatly hurt the plaintiff and to destroy the vision of both eyes, and deprive him of sight and render him blind, or nearly so, for life." It was further alleged that "the direct and proximate cause of his injury was the negligence of the defendant and its agents operating its tank car in causing the top of said car to be left open and the key of said bottom valves to be turned and opened when the plaintiff was directed and caused to go underneath the said car and to remove the nipples from the tubular apertures thereunder."

Appellee was engaged, as an employe of appellant, in taking care of its yard and tracks at Rosenberg, Texas, and he also assisted about the oil tanks and tank cars in the yard of appellant. His eyes were so badly damaged by oil spouting in his face, while he was assisting in putting the hose to an oil tank, that his sight is permanently impaired, and he was discharged from the service of appellant because he could not see to perform his duties. He thus described the accident:

"The oil tank-car was switched out of the train and placed on the sidetrack opposite the stationary tank, and I was told to get the hose and attach to the nipples at the bottom of the car. Mr. Naylor, an employe of the defendant, who had charge and the direction of the unloading of the cars, went on top of the oil tank-car; there is a place on top of the car, which is an opening in the tank-car, having a removable top to it, in which the oil is loaded into the car. There is

a rod, or key, running from the top of the car down to the bottom and inside of the car, which turns the valve at the bottom of the car. Beneath these valves were two apertures, or tubes, which are closed on the outside by what I call taps, or nipples, being screwed on. Mr. Naylor went on top of the car. It was his business to see that the key worked all right, and that the valve at the bottom was closed, so that when the nipples were taken off the tubes the oil would not spout out until the valves were turned. After · he had gone on the car he called to me that it was all right, to go ahead and take off the nipples and put the hose upon the tubes underneath the car. At the time I was injured I was taking the tap from underneath the oil car so as to be able to connect the pipe to it and unload the oil, and while doing this the oil blew all over my face.

"I do not know whether there was anything wrong or the matter with the appliances or valves inside the car or not, because as soon as I got the tap off the tubes underneath the car the oil blew all over my face. The kind of oil tank-car it was was one of the kind usually used on this railroad; that is, it was a car with a tank situated on it; the tank was long and round. On the top of the car is a hole into which to load the oil into the car. It has a place up there which closes up when they are not taking the oil out. In order to unload the car in safety, it was necessary to turn the key on the top of the car, so as to close the holes or tubes at the bottom of the car. If the key had been turned on top of the car, the oil would not have blowed or spouted into my face when I moved the nipples at the bottom of the car. That car had two nipples at the bottom. The nipples at the bottom of the car were about one-quarter of a foot long. The one on this car was about that big, and the nipples screwed on the end of the tubes. I was under the car to fasten the hose. The pump man, Mr. Naylor, told me to go under the car and take the screws off and attach the hose. He was on top of the tank-car. I did not know that the tank-car was open at the top when I went under it; the pumping man, Mr. Naylor, told me to go and put the hose to the nipples, and he connected it with the hose and said it was all right; when I did, the oil blowed in my face."

That evidence was sharply contradicted by the witnesses of appellant, and the first, second, third and fourth assignments of error seem to proceed upon the theory that, as its evidence tends to show contributory negligence and assumption of the risk, the verdict of the jury should have been set aside. This, however, is not the theory upon which trials by juries are conducted, but the power is lodged with the jury to disregard the evidence of appellant which contradicted the testimony of appellee and to accept such testimony as giving a true account of the affair. If the testimony of appellee be true, he was not guilty of contributory negligence, nor had he assumed the risk arising from the situation. He swore that there was a rod or key which · turned the valve at the bottom; that the key was manipulated by the man who had charge of unloading the cars; that it was the business of that man to see that the key worked all right and that the valve was closed, so that when the nipples were taken off the oil would not spout. The man in charge told appellee everything was in proper

condition and ordered him to take off the nipples and put the hose on the tubes under the car, and while executing that command the oil blew into his face inflicting the injury. The jury credited that testimony and it formed a sufficient basis for their verdict. Under that testimony the injuries must necessarily have resulted from the negligence of the foreman in operating or manipulating the oil tank.

There was no allegation that gravel or something else had in some manner gotten into the valve and caused the spouting of the oil, and the court properly rejected evidence of the surmises of witnesses that such a condition existed. There was nothing in the pleading nor the circumstance upon which to base the guesses made by the witnesses as to what caused the oil to spout, and it did not have a tendency to disprove the case of negligence made by the testimony of appellee. The theory of the defense was that appellee had voluntarily gone under the car when he knew that the oil was running, and the desired opinions of the witnesses had no connection whatever with that theory.

The sixth assignment of error is overruled. That part of the charge which instructed the jury that appellant would be liable if the spouting of the oil was a latent or secret danger incident to the work which was unknown to appellee and could not be ascertained by him in the exercise of ordinary care, but was known to appellant, was permissible as it presented an issue deducible from the pleadings of appellant which alleged that the dangers of the situation were open to the observation of appellee. If the dangers were hidden so that appellee could not and did not discover them, and appellant knew of them, it would be liable for sending him into a place where such hidden dangers would be developed by the acts of its agents in opening the valves. The language used is wrested from its connections and criticised without reference to them. When read as a whole, the criticised section of the charge is not open to the attacks made upon it.

So far as the special charge, whose rejection is complained of in the seventh assignment of error, embodied the law and was applicable to the facts, it was given in the general charge of the court. There was no evidence tending to show that the spouting of the oil was a danger ordinarily incident to the work in which appellee was engaged, and on the other hand appellant sought to show that it was brought about by unusual conditions.

The court did not err in refusing to present the third special charge requested by appellant. The defenses of contributory negligence and assumed risk were clearly presented by the court and it was unnecessary to repeat the instructions.

The ninth assignment of error complains of the rejection of a special charge which sought to instruct the jury to reject testimony as to the defective condition of the machinery. The charge was properly refused because there was no evidence whatever of any defects in the machinery. If it were true, as stated by appellant, that it had proved by its witness that there was a defect in the valve, to have given the requested charge would have been extending the privilege to appellant of demolishing and destroying a man of straw erected by itself.

If appellee's eyes were so badly damaged that appellant concluded he could not perform the duty of caring for its yard, and he was on

that account discharged, as the testimony showed, it would not seem that a verdict for $3,000 would be excessive. Appellee swore that his eyes were in such condition as to prevent him from earning a living, and that they were growing worse. The judgment is affirmed.

*Affirmed.*

Writ of error refused.